**184**

Norman PECK, Plaintiff,

v.

Angelo APONTE, Commissioner of the Division of Housing and Community Renewal of the State of New York, in his official capacity, Defendant.

No. 92 Civ. 6443 (KTD).

United States District Court,
S.D. New York.

March 16, 1995.

Jeffrey Glekel, Skadden, Arps, Slate, Meagher & Flom (Peretz Bronstein, of counsel), New York City, for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y. (Ellen Fried, June Duffy, of counsel), New York City, for defendant.

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, Norman Peck is the owner of unsold shares and the holder of proprietary leases in nine rent controlled apartments located in a cooperative building at 325 West End Avenue in New York City ("325 West End"). Plaintiff brings this action for declaratory and injunctive relief against Defendant Angelo Aponte, Commissioner of the New York State Division of Housing and Community Renewal ("DHCR"), alleging a deprivation of his rights under the Constitution and laws of the United States and under the Constitution of New York.

DHCR is a public agency of the State of New York. Pursuant to various New York statutes,[1] the DHCR is charged with the administration of the Rent and Rehabilitation Law of the City of New York (the "Rent Control Law"). Pursuant to this law, the DHCR sets maximum collectible rents for rent-controlled apartments and also enforces rules which permit hardship increase applications to be filed by owners. An applicant may apply for a hardship increase if he is receiving a negative return on a rent controlled property. New York Unconsolidated Law § 2202 (McKinney 1987) ("Hardship Regulations"). The purpose of this provision is to bring the revenue received for the property to a level at least commensurate to the cost of maintaining the property. *See id.*

In the complaint, Plaintiff alleges violations of Procedural and substantive Due Process under both the United States and New York Constitutions. He asserts both facial and "as applied" challenges to the Rent Con-

---

1. These statutes include the Local Emergency Housing Rent Control Act, Ch. 21, Laws of 1962, and the Omnibus Housing Act, Ch. 403, Laws of 1983.

trol Law, claiming that the law results in a "taking" of his property without due process.

Defendant originally moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) or, in the alternative, to grant summary judgment pursuant to Rule 56, on the grounds of *res judicata* and/or collateral estoppel. By order dated October 15, 1993, I denied that motion in its entirety, but questioned the ripeness of the matter. For reasons discussed below, defendant's motion to dismiss is granted because the matter is not ripe for adjudication.

### DISCUSSION

Plaintiff asserts in his complaint that he will suffer losses on his investment property through the year 2002. This projection is apparently based on the duration of the DHCR rent schedule. He claims through his own calculations that the rent schedule virtually guarantees a negative return on his investment. This low return, argues Plaintiff, will result in a *de minimis* sale value in the 325 West End properties. Plaintiff asks this court to rule in its favor because future investors in 325 West End, which is not yet for sale, may perceive it as an unwise investment.

■ A matter is not ripe for adjudication unless a justiciable case or controversy exists. *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 138, 95 S.Ct. 335, 355, 42 L.Ed.2d 320 (1974) (citations omitted). Although there is no clear definition for the phrase "case or controversy," there must be definite and concrete issues involved which cannot be based on a hypothetical dispute. *Long Island Lighting Co. v. Cuomo*, 666 F.Supp. 370, 391 (N.D.N.Y.1987) (quoting *Aetna Life Insurance Company v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)). In the end, the question becomes whether there is a substantial controversy of sufficient immediacy and reality to warrant judicial intervention. *Id.* (citing *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

■ Whether a case is ripe is often a question of timing. *Regional Rail Reorg. Act Cases*, 419 U.S. at 140, 95 S.Ct. at 356. The court's role in these instances first is not to decide the merits of a particular case, but to decide if that case can be decided on the merits given the current situation. The courts are not to adjudicate "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985) (quoting C. Wright, A. Miller & E. Cooper *Federal Practice and Procedure* § 3532 (2d ed. 1984)). Two factors have been annunciated by the Supreme Court as a guide in deciding the ripeness of a case. These factors are "fitness of the issues for judicial decision" and "hardship to the parties if the court withholds consideration." *Thomas*, 473 U.S. at 581, 105 S.Ct. at 3333 (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). The fitness aspect depends on the extent to which the issues are "purely legal, and will not be clarified by further factual development." *Id.* The hardship factor does not mean that the court must wait for the onset of injury to a party to decide if the relief requested should be granted. Existence of an immediate impending injury will suffice. *Regional Rail Reorg. Act Cases*, 419 U.S. at 143, 95 S.Ct. at 358 (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923)).

■ Plaintiff's claims stem from his concern that he will not make a profit on his properties. However, whether he will or will not make a profit on 325 West End remains to be seen. Plaintiff asserts that his expenses in future years will equal or exceed his past expenses. It is on these numbers that he bases his calculations and arrives at a *de minimis* sale value. Additionally, Plaintiff has devoted several pages of his brief to the fair market value of the properties and to the fact that the properties will be difficult, if not impossible, to sell. However, Plaintiff offers no evidence of a failed attempt to sell the property or even an intention to sell the properties in the immediate future. As far as I can tell, Plaintiff intends to retain legal ownership of the properties. Until there comes a time when Plaintiff is unable to sell

the properties, his argument regarding the fair market value is premature. For these reasons, the parties would suffer no additional hardship by my refusal to consider the matter.

In *Southview Assoc., Ltd. v. Bongartz,* 980 F.2d 84 (2d Cir.1992), the Second Circuit identified a two prong test to be applied in assessing the ripeness of regulatory takings and substantive due process claims.[2] *Id.* at 95. The first prong requires a final decision from a regulatory agency prior to judicial review. *Id.* Without a final decision as to how the regulations are to be applied to Plaintiff, the claim is premature. The second prong requires a party to have sought compensation for the "taking" if the state provides for such compensation in the regulations. *Id.; see Regional Rail Reorg. Act Cases,* 419 U.S. 102, 124, 95 S.Ct. 335, 349.

 According to the Rent Control Law, Plaintiff has an administrative remedy available to him. Plaintiff may request an increase according to the Hardship Regulations.[3] To this end, Plaintiff must submit a Petition for Administrative Review ("PAR"), which he has failed to do. Until the DHCR has arrived at a final decision, the economic impact of the application of the regulations cannot be determined. *See Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 191, 105 S.Ct. 3108, 3118, 87 L.Ed.2d 126 (1985).

The inquiry for the "just compensation" prong is similar to that for the final decision prong. "Whether the inquiry asks if a regulation has gone too far, or whether it seeks to determine if proffered compensation is just, no answer is possible until a court knows what use, if any, may be made of the affected property." *McDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 350, 106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986). Thus, "[f]or similar reasons, a court cannot determine whether a municipality has failed to provide just compensation until it knows

what, if any, compensation the responsible administrative body intends to provide." *Id.*

As with the final decision prong, this just compensation determination cannot be made because Plaintiff has failed to avail himself of the administrative remedies by filing a PAR. Until the DHCR makes a final determination regarding compensation possibilities, Plaintiff's claim is premature.

For the foregoing reasons, Plaintiff's claim is not ripe for judicial adjudication. Accordingly, the complaint is dismissed.

SO ORDERED.

---

2. The Court in *Southview* adapted this test to regulatory takings from the Supreme Court decision in *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), which analyzed ripeness in the context of a civil rights case.

3. New York Unconsolidated Law § 2208 et seq. (McKinney 1987).